# IN THE COURT OF APPEALS OF IOWA

No. 20-1566
Filed March 17, 2021

**IN THE INTEREST OF T.R.,**
**Minor Child,**

**J.R., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Carroll County, Joseph McCarville,
District Associate Judge.

A father appeals the termination of his parental rights to his child.
**AFFIRMED.**

Ashley Beisch of Johnson Law Office, Ogden, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant
Attorney General, for appellee State.

George Blazek of Mundt Franck & Schumacher, Dension, attorney and
guardian ad litem for minor child.

Considered by Bower, C.J., Tabor, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2021).

**BLANE, Senior Judge.**

A father appeals the termination of his parental rights to a fourteen-year-old son, T.R. He contends the State failed to prove the statutory ground for termination, it was not in the child's best interests, and the parent-child relationship should preclude termination. We reject each ground urged by the father on our de novo review and affirm the juvenile court.

The father has been T.R.'s only parent since T.R. was an infant.[1] They lived with the paternal grandfather. A department of human services (DHS) social work case manager testified the grandfather has always had a hand in caring for T.R.; the father has never cared for T.R. by himself. DHS got involved with the family when T.R. reported to school staff that the father had touched him inappropriately. The child abuse investigation and report were founded as to sexual abuse. These acts involved the father drunkenly sleeping naked in the child's bed and touching the child's penis. T.R. was removed on September 17, 2019 and, although moved through several placements, he has been with the same foster family since July 2020.

Throughout the case, DHS's two main concerns have been the founded child abuse report of sexual abuse and the father's substance-abuse issues. The father has a long history of substance abuse. T.R. reported his father was once intoxicated and drove into a ditch with T.R. in the vehicle, which his father acknowledges. There were also reports that the father was drinking to a state of intoxication in the home while supervising T.R. T.R. has an intellectual disability

---

[1] T.R. has had no contact with his mother for thirteen years. Her rights have been terminated, and she does not appeal.

and requires "supervision like a young child, which is basically a hundred percent supervision." The DHS social worker testified "when [the father] was drinking to intoxication, he's not able to provide that kind of supervision."

The father has had several substance-abuse evaluations and began treatment in February 2020 but was arrested and charged with operating while under the influence of alcohol (OWI) in May. In June, he was discharged from treatment when he tested positive for alcohol at a meeting. He started treatment again in fall 2020 and was participating at the time of the termination hearing.

The father also has an intellectual disability. He attended a court-ordered mental-health evaluation and completed therapy. The therapist reported he did not meet his therapeutic goals but had gained the most that he could out of the therapy based on his intellectual abilities.

In addition to therapy, the father has attempted to address the sexual abuse history with some in-home services related to appropriate boundaries and parenting skills. But as yet the father has not acknowledged any sexual abuse occurred. Because the sexual abuse occurred while he was intoxicated, the DHS social worker believed the ongoing substance-abuse issues would continue to exacerbate the risk of further sexual abuse of T.R. Through multiple discussions with service providers, the social worker believed the father did not understand how his alcohol consumption negatively affected his parenting. The social worker also testified the father should attend family therapy with T.R. if he regained custody and if he was willing to admit the sexual abuse. But his continued denial of those events has held up provision of those types of services.

Throughout the events, the father has lived with the paternal grandfather. The grandfather has always assisted in the care of T.R., and the social worker did not believe the father could care for T.R. without the grandfather's assistance. At the termination hearing, T.R.'s attorney made a professional statement to the court, explaining the grandfather has recently been diagnosed with a serious illness and has a very poor prognosis. So one of the case expectations has become that the father will find his own living accommodations. Even though he qualifies for entry into a group home for adults with intellectual disabilities, because living in the group home would require the father to quit his employment, which he likes, he has declined to enter, preferring to remain in the grandfather's home.

The court held a termination hearing on November 10, 2020, and issued a ruling terminating the father's parental rights in November 23, 2020.[2] The father appeals.

"We review child-welfare proceedings de novo." *In re A.H.*, 950 N.W.2d 27, 33 (Iowa Ct. App. 2020). "The juvenile court's fact findings do not bind us, but we give them weight, particularly with regard to credibility." *Id.* Our primary concern is the best interests of the child[]." *Id.*

---

[2] Neither party requested the juvenile court take judicial notice of the underlying child in need of assistance (CINA) record. Neither party offered any of the CINA exhibits as exhibits in the termination-of-parental-rights (TPR) case. And neither party offered additional TPR exhibits. The court took notice of the criminal file in the OWI case. Therefore, the only evidence before us on appeal is the trial transcript, reports filed as pleadings, and OWI record. We are able to reach our conclusions based on that record.

**Termination ground.**[3]    The juvenile court found sufficient evidence to terminate the father's parental rights pursuant to the statutory ground of Iowa Code section 232.116(1) (2020), paragraph (f).    In his petition on appeal, the father contends the State failed to prove the ground for termination and relied excessively on his lack of independent living and his intellectual disability.    Termination under paragraph (f) requires clear and convincing evidence:

> 1. The child is four years of age or older.
> 2. The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> 3. The child has been removed from the physical custody of the child's parent for at least twelve of the last eighteen months . . . .
> 4. There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f).

We find the ground for termination is met.  T.R. is more than four years old, has been adjudicated CINA, and has been out of the father's care for the required timeframe.  More to the point, the father's argument appears to focus on the fourth prong specifically.  We find the evidence is clear and convincing that T.R. could not be returned to the father's custody at the time of the termination hearing.  *See*

---

[3] As we begin to address these issues, we walk a narrow line.  Even though child-welfare proceedings come to us on an expedited timeline and without full briefing, a party is still expected to make its argument with citations to authority and to the record or at least to record facts.  *See* Iowa Rs. App P. 6.201(1)(d), 6.1401–Form 5; *Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [a party] might have made and then search for legal authority and comb the record for facts to support such arguments."); *Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974) ("To reach the merits of this case would require us to assume a partisan role and undertake the appellant's research and advocacy.  This role is one we refuse to assume.").  The paucity of argument in appellant's petition forces us almost to the point of undertaking appellant's advocacy.  But we will not, as the State suggests, deem the issues waived.  We choose to address the issues minimally presented.

*In re A.M.,* 843 N.W.2d 100, 111 (Iowa 2014) (defining "at the present time" to mean at the time of the termination hearing).

Contrary to the father's position, the court did not rely excessively on his intellectual disability, even though it is a valid ground to consider in determining whether it is safe to return the child to the parent's custody. *See id.* In this case, the father's intellectual disability has impacted his parenting in ways he is unable to understand. And, by extension, he is unable to correct his conduct—alcohol has historically exacerbated his conduct that led to committing sexual abuse against T.R. The father is unwilling or unable to obtain the benefits of therapy and treatment for both his substance abuse and his mental health. The father has also been unwilling or unable to show he is able to live independently of his father by finding his own housing. Unfortunately, patience with a parent "can soon translate into intolerable hardship for their" child. *In re A.C.,* 415 N.W.2d 609, 613 (Iowa 1987). There is ample evidence in this record to determine T.R. could not be returned to his father's care at the present time without the fear of T.R. meeting further harm. This is especially true considering the grandfather's current health.

**Best interests.** The father next contends termination was not in T.R.'s best interests because children do better with their biological families. In making the best-interests determination, we give primary consideration to the child's safety; the best placement for furthering their long-term nurturing and growth; as well as their physical, mental, and emotional condition and needs. Iowa Code § 232.116(2); *see In re P.L.,* 778 N.W.2d 33, 37 (Iowa 2010). Safety and the need for a permanent home mark the "defining elements" in a child's best interests. *In re J.E.,* 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially).

We find termination to be in T.R.'s best interests. T.R. has special intellectual needs, and the DHS workers did not believe the father could provide that level of care. The father has put T.R. in danger by drunk driving with his son in the car. And he has perpetrated sexual abuse against his son. The father has not addressed his substance-abuse issues and does not even acknowledge the sexual abuse T.R. reported occurred. Under those circumstances, the considerations of T.R.'s safety and long- and short-term well-being require termination of the father's rights.

**Exceptions.** Finally, the father asks the court to apply a statutory exception under section 232.116(3) to forego termination. The father cites paragraph (a) for when "[a] relative has legal custody of the child" and paragraph (c) for when "termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *See* Iowa Code § 232.116(3)(a), (c). But application of those factors is permissive, not mandatory. *See In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019). And we do not find the record supports applying either of them to withhold termination. The juvenile court rejected the notion of the grandfather assuming a guardianship given his health situation, and we agree. The current foster parents do not want to assume a guardianship, but prefer to adopt and have indicated this desire. We see no reason to believe severing the parental relationship will be detrimental to T.R. Finding no grounds for reversal, we affirm.

**AFFIRMED.**